Cherry, J.,
concurring in part and dissenting in part:
I concur with the majority that the burglary aggravating circumstance must be stricken pursuant to McConnell v. State.[1]1 also concur that the district court did not err in denying Hernandez’s re *996 maining claims for post-conviction relief. Finally, I concur with the majority in concluding that McConnell does not operate to invalidate the torture aggravating circumstance because Nevada’s definition of torture murder sufficiently narrows the class of persons eligible for the death penalty.
I dissent, however, from the majority’s conclusion that after reweighing the aggravating and mitigating evidence Hernandez’s death sentence may nonetheless be upheld. Although there is sufficient evidence to support the remaining aggravating circumstances, they are not persuasive enough to convince me beyond a reasonable doubt that the jury would have found Hernandez death eligible and imposed death absent the erroneous burglary aggravating circumstance. I do not minimize the gravity of the aggravating circumstances. The trial testimony established that Hernandez penetrated the victim’s vaginal cavity with a dinner knife, most likely postmortem. The evidence further showed that Hernandez brutally inflicted multiple stab wounds and strangled Donna with great force. Despite the viability of the remaining aggravating circumstances, however, Hernandez presented a compelling case in mitigation such that, in my view, the death sentence must be vacated.
During the penalty phase, Hernandez introduced testimony from his employer, friends, coworkers, and brother and made a statement in allocution. Specifically, Anibal Sabate testified that Hernandez worked at Sabate’s restaurant. He characterized Hernandez as a good employee with integrity. Further, several coworkers from Hernandez’s full-time job at Sam’s Town Casino lauded him as an exceptional, respectful, and polite employee who had been selected as employee of the month. These witnesses also described Hernandez as a kind, generous, and supportive friend. Many of these witnesses also testified that Hernandez worked three jobs, including owning his own janitorial service, and that he always spoke and acted lovingly toward his daughter Ana. Hernandez expressed to his friends and coworkers that he desired to reunite with Donna and live together as a family. Hernandez’s brother, Raphael, testified that he lived with Hernandez and Donna for a period of time and never observed any problems between them. Raphael also stated that Hernandez, originally from Mexico, had never been in trouble with the police. Raphael Meza, a childhood friend from Mexico, testified that Hernandez worked hard holding down three jobs. Meza also described Hernandez as a devoted father who wanted to reunite with his ex-wife and to provide a better future for his daughter. Meza testified that Hernandez had a good and caring family while growing up and that Hernandez had an alcohol problem.
Hernandez made a statement in allocution, expressing his deep love for his daughter Ana. Hernandez stated that his only reason *997 for living was Ana and that one of the best moments in his life was when Ana was born. He pleaded with the jury to allow him the opportunity to be with his daughter.
The guilt phase evidence also showed that immediately after Officer Swoboda stopped Hernandez for speeding, Hernandez exited his car with his hands raised and crying, asking Officer Swoboda to “Just shoot me, just kill me.” Hernandez was emotional throughout the encounter and subsequent analysis of his breath revealed blood alcohol levels of 0.165 and 0.154 percent. During transport to jail, Hernandez cried and attempted to jump out of the moving vehicle, telling the police escort that his life was over and to shoot him. In the booking area of the jail, Hernandez repeatedly hit the back of his head against a concrete wall and had to be restrained.
Considering the force of the evidence presented in mitigation weighed against the evidence supporting the remaining aggravating circumstances, I would vacate Hernandez’s death sentence and remand this matter for a new penalty hearing. In reaching this conclusion, I convey to all counsel the importance of presenting mitigation evidence in these types of cases.

120 Nev. 1043, 102 P.3d 606 (2004).